UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

```
*************************** *
Alexander Morin             *
      Plaintiff             *
                            *
v.                          *        Case No. 1:16-cv-00380
                            *
Town of Farmington          *
      Defendant             *
                            *
         &                  *
                            *
James Reinert, Arthur Capello, *
Charles King, Paula Proulx, *
James Horgan, and           *
Brian St. Onge              *
      Defendants            *
*************************** *
```

## SECOND AMENDED COMPLAINT

**Preliminary Statement**

This complaint seeks damages for the wrongful termination of Alexander Morin ("Alex") by the Town of Farmington, Farmington Fire Chief James Reinert, Farmington Town Administrator Arthur Capello, and the 2015 Farmington Board of Selectmen, in violation of N.H. RSA 98-E and the First Amendment of the United States Constitution pursuant to 42 U.S.C. §1983. Had the defendants not wrongfully terminated Mr. Morin in violation of his statutory and constitutional rights, he would be free from the lost wages, lost earning capacity, attorney's fees, emotional distress, loss of life enjoyment and reputational harm caused by the defendants' unlawful actions.

1

**I.     Parties:**

1. The plaintiff, Alex Morin, is a resident of the State of New Hampshire with an address of 1271 Ten Rod Road, Farmington, New Hampshire 03835.

2. The defendant, the Town of Farmington, is a town in Strafford County, New Hampshire with an address of 356 Main Street, Farmington, New Hampshire 03835.

3. The defendant, James Reinert, is a resident of the State of New Hampshire with a business address of 381 Main Street, Farmington, N.H. 03835.

4. The defendant, Arthur Capello, is a resident of the State of New Hampshire with an address of 24 Chipmunk Lane, Farmington, New Hampshire 03835.

5. The defendant, Charles King, is a resident of the State of New Hampshire with an address of 135 Ten Rod Road, Farmington, New Hampshire 03835.

6. The defendant, Paula Proulx, is a resident of the State of New Hampshire with an address of 22 Elm Street, Farmington, New Hampshire 03835.

7. The defendant, James Horgan, is a resident of the State of New Hampshire with an address of 1255 Meaderboro Road, Farmington, New Hampshire 03835.

8. The defendant, Brian St. Onge, is a resident of the State of New Hampshire with an address of 191 Poor Farm Road, Farmington, NH 03835.

**II.    Jurisdiction and Venue:**

9. Jurisdiction over the plaintiff's First Amendment and 42 U.S.C. §1983 claims is proper pursuant to 28 U.S.C. §1331. The Court may exercise pendent jurisdiction over the plaintiff's State law claims.

10. Venue is proper pursuant to 28 U.S.C. §1391(b)(2) because the events and giving rise to the plaintiff's claims occurred in New Hampshire.

### III. Facts:

11. From approximately January 8, 2012 until July 21, 2015, Alex Morin, the plaintiff, was a paid fireman for the Town of Farmington Fire Department. He was an hourly employee making $13.00 per hour working between 25 and 40 hours per week.

12. Alex grew up in Farmington and had wanted to become a fireman since he was a small child. While in high school, he spent approximately 4 years in the Farmington Fire Department's Explorer Program, a youth program allowing minors to explore a future career in firefighting.

13. During his tenure with the Fire Department, Alex was a very active and successful fireman. In his approximately three and a half years, he responded to over 500 emergency calls. He also obtained over 900 hours of training, much of which he paid for himself. He was a dedicated fireman who was always trying to better his abilities for the benefit of the Farmington community.

### A. The Facebook Conversation Leading to Alex's Termination

14. On or about Friday, July 18, 2015, Alex was on the "Farmington Community Forum" Facebook page when people began publically commenting about an emergency taking place. Alex, being out of town and in his individual capacity, began commenting as well. At least one other off-duty fireman, Dave Sowards, was also partaking in the group discussion.

15. Alex gave his opinion that "[p]eople's personal emergencies don't need to be put on Facebook." The group then entered into a dialogue regarding what should or should not be posted on Facebook.

16. Alex offered no further opinion until a community member, Lauryl Eastman Vachon, wrote a message stating: "38 yo unconscious not breathing cocheco road- got this off the scanner (sic)." To this, Alex responded: "Some stuff doesn't need to be on here and that is one of them Lauryl."

17. Members of the group then retorted back at Alex and in reply he stated his opinion that: "The only people that need to be privy to details of emergencies are the emergency responders and the families involved. It should not be a conversation on Facebook."

18. Karen Warburton, a community member, then replied: "Oh ok (sic). Maybe this group should be eliminated......Shame on people for caring."

19. Alex then responded: "How do you think people would feel finding out that their 38 year old child or friend thats on cocheco Rd isn't conscious or breathing from the Farmington news page? Have some desency and stop being nosey (sic). <u>My opinion</u>." (emphasis added). Alex stated this opinion without revealing any information regarding the emergency that had not already been shared by a community member on the Facebook page. In fact, Alex did not know any additional information because he had the night off and was out of town.

20. Two community members then replied to Alex and he responded: "Like I said, <u>my opinion</u>." (Emphasis added).

21.     Multiple community members then responded communicating their dissatisfaction with Alex's opinion.  One such response from Joann Doke stated: "I think most people (including myself) assumed it was a car accident or a fire until 2 firefighers(sic) posted cryptic comments[.]"  Ms. Doke made this statement despite the fact that Alex had not said anything, cryptic or otherwise, that divulged confidential information.  Indeed, the only information he referenced was information that had already been reported by community members on the page.

22.     In fact, because Alex had not divulged any information that he may have known as a fireman, one community member, Vanessa Hapsis Smith, stated: "You could have just posted medical emergency on Cocheeco Road and eased people's inquiry[] Alex or Dave! That's all just a little something(sic)!!"

23.     In response to this, Dave Sowards stated: "It was a medical emergency." Alex merely stated: "I said personal emergency an hour ago."  Alex once again did not offer or reveal any confidential information.

24.     At that point, people made offensive comments to Alex such as remarks from Edward King including: "Lighten the f......k up Alex Morin" and "If it bothers you that bad Alex Morin, then get off from facebook (sic)."

25.     Dave Sowards then responded to those targeting Alex in a very hostile and unpleasant manner stating: "If u shit heaps had a fucking clue .. It's none of your business what happened . even if it was a splinter in her finger.. If u want to live in Lowell run your trap on there page (sic)."  Dave Sowards also stated:  "Alex Morin don't take there bs they voted Obama (sic)!!"

26.     Despite the very hostile exchange that was occurring, Alex reiterated his opinion in a manner that was both inoffensive and non-hostile, stating: "If you want to know what happens every second and where your fire trucks and ambulances are going buy a scanner. But leave people's medical emergencies off Facebook (sic)."

27.     Still receiving angry responses, Alex attempted to leave the conversation stating: "Clearly everyone is missing the point I'm trying to make. So I'll stop trying to make it."

28.     Faced with an immediate response that he was using "bullying tactics," Alex responded: "It's not bull[y]ing. It's trying to make a point. When someone has a different opinion from someone else makes them a bully now? It use to be called debating (sic)."

29.     Angie Reinholz then lectured Alex on being more respectful as a public servant to which Alex made it clear that he was offering an opinion in his individual capacity stating: "First of all we aren't servants. We are highly train clinicians and technicians. Secondly <u>this has nothing to do with our career choice</u>. Thirdly I'm not looking for your respect or your brownie points. Have a nice day everyone (sic)." (Emphasis added).

30.     Angie then called Alex "sweetie" and continued to lecture him and call him a public servant to which he, then frustrated, responded: "Public safety officials. Don't call me sweetie I'm not your child. I have said nothing bad about the town. Been here 21 years (sic)."

31. The community conversation then continued for several hours to which Alex only provided one response, once again clarifying his individual opinion: "All I am saying if you were ment to know you would. In my opinion things like this shouldn't be on Facebook. Send your prayers all you want but details shouldn't be here (sic)."

**B.    Alex's Termination**

32**.**   On July 20, 2015, the Farmington Board of Selectmen held a meeting and went into non-public session to discuss disciplinary action against Alex Morin and Dave Sowards based upon a complaint from a community member regarding the aforementioned Facebook group conversation.  The Board of Selectmen made the decision to terminate both men for violation of the Farmington Social Media Policy.

33.   On July 21, 2015, four days after the Facebook conversation, Alex received a termination letter from the Town of Farmington Administrator Arthur Capello stating that he was being terminated for violating the Social Media Policy.

34.   Alex's termination letter stated that "[t]o appeal this termination, you must return written notification of your intention to appeal to Acting Chief Reinert with in (sic) seven working days."

35.   Alex drafted and sent a written appeal request to Chief Reinert immediately upon receiving his termination letter.

36.   Chief Reinert sent a letter in response to Alex's appeal request, on July 27, 2015, stating that he would not overturn Alex's termination because "I was not involved directly in the disciplinary process brought forth by the Board of Selectmen."  The

minutes from the non-public session on June 20, 2015, show that Chief Reinert was, in fact, directly involved with Alex's termination.

37. Chief Reinert then sent Alex's appeal request to Farmington Town Administrator Arthur Capello. Administrator Capello denied Alex's appeal in a formal letter dated August 13, 2015.

38. Alex then wrote a request for his appeal to be heard by the Farmington Board of Selectmen.

39. On August 31, 2015, Alex appeared at a meeting of the Farmington Board of Selectmen and, in a non-public session, attempted to argue for his job back with the assistance of his father, Michael Morin. The Board of Selectmen upheld Alex's termination.

40. Administrator Capello followed up after the meeting in a letter to Alex dated September 2, 2015. In the letter, Administrator Capello explained that the Board upheld Alex's termination "based upon [Alex's] failure to adhere to the Town's Social Media Policy, Sections 4.a. (1) and (3), which [Alex] received on April 6, 2015, together with [Alex's] work history, which included two prior written disciplinary actions."

41. The Social Media Policy sections referenced by Administrator Capello that Alex is alleged to have violated are as follows:

> 4. a. (1) "On personal time, Employees are free to express themselves as private citizens on social media to the degree that their speech does not impair or impede performance of duties <u>or negatively affect the public perception of the Department or Town</u>." (Emphasis added).

        4. a. (3) "Employees shall not post, transmit, or otherwise disseminate any information to which they have access as a result of their position without permission from the appropriate authority."

    42.    The Social Media Policy under 4. a. (1) is violative of RSA 98-E and the First Amendment of the United States Constitution on its face because it bars all speech that "negatively affect[s] the public perception of the Department or Town." RSA 98-E specifically protects government employees' "full right to publicly discuss and give opinions as an individual on all matters concerning any government entity and its policies." The First Amendment protects a government employee's right to publicly discuss matters of public concern when doing so will not materially harm the government's ability to efficiently fulfill its responsibilities to the public. The speech protected by RSA 98-E and the First Amendment includes criticism that may "negatively affect the public perception" of a department or town.

    43.    As to 4. A. (3), as explained above, Alex did not divulge or disseminate any confidential information he obtained as a result of his position, therefore, he clearly did not violate this policy.

    44.    By wrongfully terminating Alex Morin for engaging in protected speech as an individual in a public forum, the defendants caused the plaintiff to suffer lost wages, lost earning capacity, attorney's fees, emotional distress, loss of life enjoyment and reputational harm. The defendants took away Alex's lifetime dream of being a fireman in his hometown. Additionally, by terminating Alex and placing a black mark on his employment history, Farmington has made it significantly difficult for Alex to

obtain similar employment at another fire department. Alex seeks to be compensated for all damages to which he is entitled due to the defendants' unlawful actions.

## COUNT I:
## VIOLATION OF N.H. RSA 98-E
### (Against Town of Farmington)

45. The allegations set forth in all proceeding paragraphs are incorporated herein by reference.

46. When Alex Morin engaged in a dialogue on the Farmington Community Forum Facebook page on or about June 20, 2015, in his individual capacity, he was partaking in his full right to publicly discuss and give opinions regarding a matter of public concern protected by RSA 98-E.

47. The dialogue that Alex was engaged in involved multiple community members discussing the response of Farmington personnel to an emergency and debating how much information should be shared about emergency situations on Facebook. Given that the debate lasted several hours and involved a multitude of community members offering passionate and differing opinions, the subject matter was clearly one of public concern within the community of Farmington.

48. Alex made clear on multiple occasions throughout the discussion that he was simply giving his individual opinion. He even explicitly stated that his opinion had nothing to do with his career choice. Alex's statements removed any possibility that anyone could rationally believe he was representing the Farmington Fire Department.

49. By terminating Alex for stating his legally-protected, individual opinion regarding a matter of public concern, Farmington violated RSA 98-E and caused Alex significant damages.

50. As a direct and proximate result of Farmington's violation of RSA 98-E, Alex suffered lost wages, lost earning capacity, attorney's fees, emotional distress, loss of life enjoyment and reputational harm. Alex additionally requests enhanced compensatory damages as redress for Farmington's termination of him in a wanton, malicious or oppressive manner.

## COUNT II:
## VIOLATION OF THE FIRST AMENDMENT OF THE UNITED STATES CONSTITUTION PURSUANT TO 42 U.S.C. §1983
**(Against James Reinert, Arthur Capello, Charles King, Paula Proulx, James Horgan and Brian St. Onge in their Individual Capacities)**

51. The allegations set forth in all proceeding paragraphs are incorporated herein by reference.

52. When Alex Morin engaged in a dialogue on the Farmington Community Forum on or about June 20, 2015, in his individual capacity, he was offering his individual opinion on a matter of public concern pursuant to the First Amendment.

53. The dialogue that Alex was engaged in involved multiple community members discussing the response of Farmington personnel to an emergency and debating how much information should be shared about emergency situations on Facebook. Given that the debate lasted several hours and involved a multitude of community members offering passionate and differing opinions, the subject matter was clearly one of public concern within the community of Farmington.

54. Alex made clear on multiple occasions throughout the discussion that he was simply giving his individual opinion. He even explicitly stated that his opinion had nothing to do with his career choice. Alex's statements removed any possibility that anyone could rationally believe he was representing the Farmington Fire Department.

55. At no point during Alex's participation in the dialogue did he partake in any speech that could undermine the Farmington Fire Department's ability to effectively and efficiently fulfill its responsibilities to the public. Therefore, the balance of interests pertaining to his speech tips in favor of Alex's right as a citizen to comment on matters of public concern.

56. Despite the fact that Alex's public opinion was protected by the First Amendment of the United States Constitution, the Farmington Board of Selectmen, on July 20, 2015, voted in a non-public session to terminate Alex in retaliation for his protected speech. The Board of Selectmen at the time consisted of Charles King, Paula Proulx, Gerald McCarthy, James Horgan and Brian St. Onge.

57. Alex appealed his termination to Farmington Fire Chief James Reinert, who unlawfully upheld his termination. Alex then appealed to Town Administrator Arthur Capello who also unlawfully upheld his termination.

58. On August 31, 2015, the same Farmington Board of Selectmen that terminated Alex in retaliation for his protected speech heard his final appeal. The Board unlawfully upheld their original illegal and retaliatory termination.

59. By terminating Alex in retaliation for stating his legally-protected, individual opinion regarding a matter of public concern, James Reinert, Arthur Capello, Charles King, Paula Proulx, James Horgan and Brian St. Onge (the "individual defendants") acted under color of law to deprive the plaintiff of his constitutional rights protected by the First Amendment of the United States Constitution.

60. As a direct and proximate result of the individual defendants' violation of Alex's First Amendment rights, Alex suffered lost wages, lost earning capacity, attorney's fees, emotional distress, loss of life enjoyment and reputational harm. The conduct of the individual defendants was willful, oppressive and/or reckless, and was of such a nature that enhanced compensatory damages and/or punitive damages should be imposed in an amount commensurate with the wrongful acts alleged herein.

## COUNT III:
## VIOLATION OF THE FIRST AMENDMENT OF THE UNITED STATES CONSTITUTION PURSUANT TO 42 U.S.C. §1983
**(Against Town of Farmington pursuant to <u>Monell v. Department of Social Services</u>, 436 U.S. 658 (1978))**

61. The allegations set forth in all proceeding paragraphs are incorporated herein by reference.

62. At all times relevant to this complaint, the Town of Farmington maintained the following unconstitutional social media policy for its employees and personnel:

> 4. a. (1) "On personal time, Employees are free to express themselves as private citizens on social media to the degree that their speech does not impair or impede performance of duties <u>or negatively affect the public perception of the Department or Town</u>." (Emphasis added).

63. The First Amendment protects a government employee's right to publicly discuss matters of public concern when doing so will not materially harm the government's ability to efficiently fulfill its responsibilities to the public. Speech protected by the First Amendment includes criticism that may "negatively affect the public perception" of a department or town. Therefore, the Town of Farmington's social media policy unconstitutionally restricts the First Amendment rights of Town employees.

64. The Town of Farmington, under the color of law, unlawfully terminated the plaintiff for violating the Town's illegal social media policy when the plaintiff expressed his legally-protected, individual opinion regarding a matter of public concern. Alex's termination for this reason is acknowledged through formal correspondence by Town officials.

65. Because the unlawful deprivation of Alex's First Amendment rights occurred pursuant to an official policy of the Town of Farmington, the plaintiff is entitled to recover against the Town of Farmington pursuant to 42 U.S.C. §1983 as well as Monell v. Department of Social Services, 436 U.S. 658 (1978).

66. Additionally, even absent the unlawful social media policy, the plaintiff is entitled to recover against the Town of Farmington due to the fact that his termination was both initiated and upheld with finality by the Farmington Board of Selectmen- the final and official policymaking authority for the Town of Farmington.

67. As a direct and proximate result of the Town of Farmington's violation of Alex's First Amendment rights, Alex suffered lost wages, lost earning capacity, attorney's fees, emotional distress, loss of life enjoyment and reputational harm. The conduct of the individual defendants was willful, oppressive and/or reckless, and was of such a nature that enhanced compensatory damages and/or punitive damages should be imposed in an amount commensurate with the wrongful acts alleged herein.

### COUNT IV:
### WRONGFUL TERMINATION
### (Against Town of Farmington)

68. The allegations set forth in all proceeding paragraphs are incorporated herein by reference.

69. Public policy would encourage a government employee, such as Alex Morin, to engage in his full right to publicly discuss and give opinions as an individual on matters of public concern pursuant to both RSA 98-E and the First Amendment of the United States Constitution.

70. In malicious retaliation for Alex's legally-protected speech on the Farmington Community Forum Facebook page, the Town of Farmington unlawfully terminated Alex Morin's employment.

71. As a direct and proximate result of Farmington's wrongful termination of Alex, he suffered lost wages, lost earning capacity, attorney's fees, emotional distress, loss of life enjoyment and reputational harm. Alex additionally requests enhanced compensatory damages as redress for Farmington's termination of him in a wanton, malicious or oppressive manner.

**REQUEST FOR RELIEF:**

WHEREFORE, the plaintiff, Alexander Morin, respectfully prays this Honorable Court:

A.   Schedule this matter to be tried by a jury;

B.   Award all damages entitled to the plaintiff for the unlawful actions of the Town of Farmington;

C.   Award enhanced compensatory damages against all defendants for the termination of the plaintiff in a wanton, malicious or oppressive manner;

D.   Award punitive damages due to the illegal conduct of all defendants being willful, oppressive and/or reckless; and

E.   Grant such further relief as this Court may deem just and proper.

                                      Respectfully submitted,
                                      ALEXANDER MORIN,
                                      By his attorneys,
                                      DOUGLAS, LEONARD &
                                      GARVEY, P.C.

Date:  November 30, 2016        By:   /s/Sean R. List
                                            Sean R. List, NH Bar #266711
                                            14 South Street, Suite 5
                                            Concord, NH 03301
                                            (603) 224-1988

## **CERTIFICATE OF SERVICE**

I hereby certify that the foregoing was electronically served through ECF to all counsel of record on this date.

/s/Sean R. List
Sean R. List